**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CLINT SMITH,

      Plaintiff-Appellee/Cross
      Appellant,

v.

STEVEN WAMPLER,

      Defendant-Appellant/Cross
      Appellee.

Nos. 01-1455 / 01-1481
(D. Colorado)
(D.Ct. No. 95-B-804)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.


      Clint Smith filed a pro se complaint under 42 U.S.C. § 1983 claiming now-

retired Denver Police Detective Steven Wampler negligently secured his residence

after a search, resulting in his loss of property. He also alleged false arrest, false

imprisonment, and discrimination. The district court interpreted his complaint to

---

      [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

include an unreasonable search claim based on physical and verbal intimidation.[1]

Wampler moved for summary judgment, asserting qualified immunity. The district court partially granted Wampler's motion, concluding there was probable cause to arrest Smith, there was no deprivation of property,[2] and the verbal intimidation involving racial slurs and threats of reincarceration did not constitute an unreasonable search. However, the district court denied qualified immunity to the extent Smith's claims of physical intimidation raised a question of fact as to whether Wampler used excessive force during the search, in violation of a clearly established constitutional right. Wampler appeals that portion of the judgment. Smith cross- appeals, challenging the summary judgment on his claims for unlawful arrest and unreasonable verbal intimidation by Wampler. Exercising jurisdiction under 28 U.S.C. § 1291,[3] we reverse in part and affirm in part.

## I.     Facts

On December 27, 1994, a confidential informant notified Wampler that drugs were being sold from an apartment in Denver, Colorado, where Smith was

---

[1]After filing his § 1983 complaint pro se, the district court appointed counsel for Smith. Consequently, his initial claims were somewhat clarified later in the proceedings. Smith also proceeds before this Court with the benefit of counsel.

[2]Smith does not challenge the district court's rejection of this claim on appeal.

[3]"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

the sole tenant. Later that day, the informant purchased a rock of cocaine from the apartment in a controlled drug buy orchestrated by Wampler. Wampler then obtained a "no knock" warrant to search the apartment based upon the controlled buy and the information provided by the confidential informant.

Wampler, with a team of law enforcement officers, executed the warrant the next evening at about 8:30 p.m. The search yielded a bag containing a green leafy substance believed to be marijuana, a brillo pad and a single edged-razor blade believed to be drug paraphernalia, and $288.00 in cash. Smith was arrested for possession of marijuana.[4]

Smith subsequently filed this 42 U.S.C. § 1983 action against Wampler. Construed liberally, Smith's pro se complaint[5] claimed Wampler used excessive force in executing the search warrant and lacked probable cause to arrest him. Specifically, Smith stated Wampler used racial slurs, threatened him with reincarceration during the search, and he was "really afraid that Detective Wampler was going to beat [him] up . . . ." (R., App. Vol. I at 22-23.)

Smith bolstered and clarified his claims with an affidavit and deposition

---

[4]At the time of his arrest, Smith was technically an inmate of the Colorado Department of Corrections as he was participating in a supervised release program for which he wore an ankle bracelet monitor. Although the possession of marijuana charge against Smith was eventually dismissed, an administrative hearing on his compliance with the conditions of supervised release resulted in Smith's return to prison.

[5] A pro se complaint is to be liberally construed. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

testimony. In his affidavit, Smith stated, "Detective Wampler became very angry because the search wasn't turning up anything." (R., App. Vol. II at 172.) He claimed Wampler threatened, "'Nigger, if you don't tell me where your dope is or where you're getting it from, I'll see that they file the habitual criminal act on you.'" (*Id*.) Smith further stated:

> Detective Wampler then asked who my I.S.P. officer was and I told him Mr. Eric Holzworth. Detective Wampler said he'd make sure Mr. Holzworth had me sent back to prison as soon as possible. I told him again that I wasn't a dope seller, and never had been. He kept calling me a "smart ass nigger." I told him that there was no need to use that word. Then he said, "you smart ass nigger, you're really pissing me off." Then, he posted up on me like he was going to hit me . . . .

(*Id*. at 173.)

Although Smith conceded Wampler did not actually strike him, he testified at his deposition:

> Mr. Wampler used the "n" word a few times and threatened me, "If you don't tell me where you're getting your drugs, I'm gonna see that your ISP officer send[s] your "a" (sic) ass back to prison as soon as they can." . . . And he tried -- like if I don't tell him, like he was gonna hit me with the pistol. And I said, "Man, you ain't got to hit me." . . . He threatened like he was gonna hit me, like he was gonna slap me with it [the pistol].

(R., App. Vol. II at 161-63.) All the threats occurred while he was handcuffed and lying on the floor. In addition, Smith argued there was no probable cause to arrest him for possession of marijuana. He claimed, contrary to the police report, there was no marijuana in his apartment.

After discovery on these issues, Wampler filed a motion for summary

judgment asserting qualified immunity. The court held qualified immunity protected Wampler as to all of Smith's claims except those based on physical intimidation. Wampler moved for reconsideration, contending that absent actual physical injury, a physical threat cannot be considered excessive force or an unreasonable search in violation of the Fourth Amendment. The district court denied his motion. This appeal and cross-appeal followed.

## II. Qualified Immunity

We review the district court's resolution of qualified immunity issues on summary judgment de novo, applying the same legal standard used by the district court. *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "We view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Lawmaster*, 125 F.3d at 1346.

While performing discretionary functions, government officials are entitled to qualified immunity, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity serves the public by striking a balance between compensating those who have been injured by official conduct and protecting government's ability to

perform its traditional functions." *Lawmaster*, 125 F.3d at 1347. When addressing a properly raised claim of qualified immunity, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right . . . ." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations omitted). If so, we must then determine whether that right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have known the conduct violated that right. *Id*.; *Lawmaster*, 125 F.3d. at 1347.[6] The plaintiff must establish both points before the defendant assumes the normal summary judgment burden of showing that no disputed material facts would defeat his claim for qualified immunity. *Id*.

## III. Unreasonable Search or Seizure

### A. Constitutional Violation

Relying on Fourth Amendment excessive force jurisprudence, the district court separately addressed each of the transgressions committed during the search: 1) physical intimidation (threatening to hit Smith with a pistol); 2) use of racial slurs; and 3) threats of reincarceration. On appeal, however, Smith does

---

[6]This two stage "order of procedure is designed to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Wilson*, 526 U.S. at 609. Deciding the constitutional question before addressing whether the right is clearly established "also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id*. (internal citations omitted).

not separate this claim, but relies on the combined effect of Wampler's conduct to establish one claim based upon the totality of the circumstances. *Lawmaster*, 125 F.3d at 1349. We agree all the undisputed facts must be considered.

The district court analyzed this case as an unreasonable execution of a search warrant. The issue is more appropriately considered as an unreasonable seizure. The blueprint for our analysis of Smith's claim is found in *Graham v. Connor*, 490 U.S. 386, 394 (1989):

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

(citations omitted). An excessive force claim arising in the context of the arrest of a free citizen invokes Fourth Amendment protections guaranteeing "the right 'to be secure in [one's] person[] . . . against unreasonable . . . seizures' of the person." *Id*. "The Fourth Amendment requires an examination of the reasonableness of the manner in which a . . . seizure is conducted . . . ." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1188 (10th Cir. 2001) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Accordingly, we begin by

determining whether Smith has stated a violation of his right to be free from unreasonable seizure.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . [I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (citations and quotations omitted). "[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of ... seizure." *Garner*, 471 U.S. at 8-9.

The justification for use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will violate the Fourth Amendment. *Id.* Allowance must be made "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 397. Moreover, the inquiry is objective, "without regard to [the officers'] underlying intent or motivation." *Id.*

Construing the facts in the light most favorable to Smith, we conclude he

established facts sufficient to survive summary judgment regarding the reasonableness of the seizure of his person during the search. Our rationale in *Holland* is instructive. In *Holland* we held the pointing of a firearm at children, mere bystanders, and "continuing to hold [them] directly at gunpoint after the officers had gained complete control of the situation . . . was not justified under the circumstances . . . ." 268 F.3d 1206, 1193. We reasoned that after a "person has submitted to [an] officer's show of force" and there is "no reasonable cause to believe that person poses a danger to the officer or to others," the continued use of threatening force may be excessive and unreasonable. *Id*. at 1192-93. We contrasted that situation to one in which the officer "simply hold[s] the weapon in a fashion ready for immediate use." *Id*. at 1193.

Here, Smith has not alleged Wampler pointed his firearm at him; instead he claims Wampler physically threatened to hit him with a pistol. Threatening to hit someone with a pistol is significantly different than pointing the pistol at them. However, Wampler did much more than merely hold his firearm in a fashion ready for immediate use. The physically threatening gesture was accompanied by racial epithets and threats to reincarcerate Smith while Smith was on the floor, handcuffed, and making no attempt to resist. Even though Smith's criminal activity was severe (drug possession and possible distribution), the totality of the circumstances demonstrates Wampler's conduct was not reasonable.

In reaching this result, we reiterate that the reasonableness inquiry under the Fourth Amendment "is a highly fact-dependent inquiry that can only be determined on a case-by-case basis." *Lawmaster*, 125 F.3d at 1349. Every threat of force or form of physical intimidation is not necessarily foreclosed to law enforcement, but these facts do not bring this case within the range of permissible behavior.

Our cases do not support Wampler's contention that physical intimidation must be accompanied by actual physical injury to be unreasonable or excessive. In *Holland*, we observed:

> Physical injury may be the most obvious injury that flows from the use of excessive force. Yet the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests--a person's "sense of security" and individual dignity. No physical injury was pleaded in *Baker* or *McDonald*. Nor was physical injury alleged in *Bivens*, which held that officers may be held liable in damages for violating persons' Fourth Amendment rights, including the use of unreasonable force.

268 F.3d at 1195 (citations omitted); *see also Martin v. Board of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990) (excessive force claim under the Fourth Amendment may be shown where there has been no physical contact between the officers and the suspect). Viewed under the totality of the circumstances, we conclude Wampler's conduct, even in the absence of physical injury, constituted excessive force and an unreasonable search in violation of the Fourth Amendment.

-10-

B. <u>Clearly Established Law</u>

Having concluded Wampler's conduct constituted an unreasonable seizure in violation of the Fourth Amendment, we now turn to whether the law at that time, based on these facts, clearly established a constitutional violation. It did not.

Smith urges a generalized analysis. He maintains the standard—that an officer's actions in executing a search must be reasonable—was clearly established in 1994, therefore, Wampler's conduct was unreasonable and he should have known it violated the constitution. That argument strikes us as a tautology and not particularly helpful because it tends to fuse or combine the separate qualified immunity inquiries: (1) whether there has been a violation of a specific constitutional right; and (2) whether the law clearly established the officer's conduct was impermissible at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 197, 201-02 (2001).

> For purposes of qualified immunity, "clearly established" means:
>
> the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id*. (internal quotations omitted). We must consider "the level of generality at which the relevant 'legal rule' is to be identified." *Id*. at 614 (citation and

quotation marks omitted).

Generally, for unlawfulness to be apparent or clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (internal citations and quotations omitted). However, a plaintiff is not required "to find a case with exact corresponding factual circumstances" because defendants must reasonably apply "the prevailing law to their own circumstances." *Id*. Thus, the appropriate question here is whether a reasonable officer in late December 1994, under the facts described, would have known the physical and psychological intimidation of Smith was unreasonable, and thus unconstitutional.

Wampler would not have reasonably known his conduct violated the Fourth Amendment. In *Holland*, we adopted other circuits' rationale in holding that pointing a firearm at a non-threatening, non-resistant person during a search was excessive force in violation of the Fourth Amendment. *Holland*, 268 F.3d at 1192-93 (noting Baker v. Monroe Township, 50 F.3d 1186 (3d Cir. 1995)). *See McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992)). Smith argues these cases demonstrate that, in 1994, a reasonable officer would have known a physical threat of the type here was unreasonable. However, these cases are clearly

distinguishable from the facts before us. In *Holland* and the cases cited therein, the conduct considered was the threat of deadly harm, a significantly different threat than the force in this case. Smith claims Wampler threatened to hit him with a pistol, not that Wampler pointed the firearm at him. This difference, standing alone, is sufficient to show that the law established in 1994 was unclear and not universally applicable to the factual situation here. We must keep in mind:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205. We conclude the law regarding the non-deadly threat of physical harm was not clearly established and Wampler is entitled to qualified immunity regarding his conduct in seizing Smith while executing the search warrant. The district court's denial of qualified immunity on this issue is reversed.

## IV. Probable Cause for Arrest

In his cross-appeal, Smith argues Wampler violated his right to be free from arrest without probable cause. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004). As a factual issue, he claims there was no marijuana found in his apartment, or if there was, it could not be connected to him. He further contends the search warrant was based upon information relating to cocaine, not marijuana, and when cocaine was not found in the apartment probable cause to arrest was eliminated. He also claims the brillo pad and razor blade were indicative of innocent activity and had no correlation to marijuana. The district court rejected this argument, holding Smith's arrest was supported by probable cause to arrest for other criminal activity, whether or not they found marijuana in Smith's apartment. We agree.

"Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3rd Cir. 1994). *See Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1080 (8th Cir. 1990). As long as the officer had probable cause to suspect the commission of a crime for which charges could be brought, the arrest is lawful whether or not law enforcement had probable cause to arrest for other crimes. *Barna*, 42 F.3d at 819; *Foster*, 914 F.2d at 1080; *Marrs v. Boles*, 51 F.Supp.2d 1127, 1135 (D. Kan. 1998). As we have stated in the context of warrantless

arrests:

> Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal citations and quotations omitted).

Based upon these principles, the district court correctly determined probable cause existed to arrest Smith regardless of whether any drugs were found in his apartment. Wampler supervised a controlled buy in which crack cocaine was purchased from an apartment where Smith was the sole tenant and then obtained a valid warrant to search the apartment. During the course of the search, law enforcement officers found a brillo pad and a razor blade, which Wampler, based on his training and experience, believed to be drug paraphernalia associated with cocaine. Smith argues the presence of only one brillo pad and one razor blade cannot support the inference of drug activity. We doubt the quantity of the items is relevant to the discussion. Even so, the controlled buy supplies ample justification for a prudent belief Smith had committed or was committing a drug related offense. Consequently, there was no violation of a constitutional right and

Wampler is entitled to qualified immunity. Accordingly, we affirm the district court's grant of summary judgment on this issue.

## V. Conclusion

The district court's denial of Wampler's motion for summary judgment based on qualified immunity is **REVERSED**. The physical threat to hit Smith with a pistol, under the totality of the circumstances, constituted excessive force and an unreasonable seizure under the Fourth Amendment. However, we conclude this constitutional right was not clearly established at the time of the violation, and thus, Wampler is entitled to qualified immunity on this issue.

We **AFFIRM** the district court's grant of summary judgment to Wampler on Smith's unlawful arrest claim, finding the existence of probable cause.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge