Animashaun WEST, Plaintiff,

v.

CITY OF PARSONS, Brandi Dunning, Scott Gofourth, Labette County, Scott Rask, and Ken Steenrod, Defendants.

Civil Action No. 97–2134–GTV.

United States District Court, D. Kansas.

Oct. 31, 1997.

Joseph L. Norton, III, J. Ryan Hare, Erker & Moore, L.L.C., Olathe, KS, for Plaintiff.

Richard C. Dearth, Dearth, Markham & Jack, Chartered, Parsons, KS, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights. Specifically, plaintiff makes the following claims: (1) Assistant County Attorneys for Labette County Brandi Dunning and Scott Rask and City of Parsons, Kansas police officers Scott Gofourth and Ken Steenrod deprived him of his rights under the Fourth Amendment by subjecting him to a search of his residence without a valid search warrant or probable cause; (2) Gofourth and Steenrod deprived him of his Fourth Amendment rights by using excessive force; and (3) the

City of Parsons and/or Labette County[1] intentionally or with deliberate indifference to plaintiff's rights authorized or tolerated the custom or practice of unconstitutional searches and seizures and the use of excessive force by members of their respective offices. This case is before the court on defendants' motion for summary judgment (Doc. 10). For the reasons set forth below, the motion is granted in part and denied in part:

(1) summary judgment is granted to Dunning and Steenrod and denied to Rask and Gofourth as to plaintiff's Fourth Amendment claims stemming from the search of his apartment without probable cause;

(2) summary judgment is granted to Steenrod and denied to Gofourth as to the excessive force claim; and

(3) summary judgment is granted to the City of Parsons and Labette County on all claims against them.

## I.  Factual Background

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

On March 31, 1994, Scott Gofourth, detective for the City of Parsons, Kansas Police Department, received information from a confidential informant that plaintiff was in the possession of large quantities of cocaine. The informant also informed Gofourth that the tires on plaintiff's car had recently been slashed. Within three hours of this conversation with the informant, Gofourth and fellow officers Ken Steenrod and Gary McFarlin arrived at plaintiff's residence to take an incident report on the slashed tires. This investigation allowed Gofourth to verify plaintiff's address and the condition of plaintiff's vehicle.

Gofourth then provided the information from the investigation and the informant to Assistant Labette County Attorney Scott Rask. Rask drafted an affidavit and application for a search warrant which Gofourth signed. Rask then drafted the search warrant. On April 1, 1994, Gofourth and Rask presented the search warrant to Judge Daniel Brewster at the Labette County Court House, who approved and signed it. There is no evidence that any other individuals were involved in the drafting of the affidavit or search warrant.

At approximately 10:45 a.m. on April 1, 1994, Gofourth, Steenrod, Rask, Assistant Labette County Attorney Brandi Dunning, and an unnamed police officer executed the search warrant at plaintiff's residence. Plaintiff was sitting on his couch with a knife or razor cutting something on a plate when Gofourth kicked in the front door. Upon seeing the officers, plaintiff fled to the back of the apartment and into the bathroom. When Gofourth entered the bathroom, a female was standing at the sink and plaintiff was attempting to flush something down the toilet. Gofourth pushed plaintiff against the shower wall and attempted to keep plaintiff from flushing the toilet. At some point during the struggle, Gofourth held his pistol to plaintiff's temple and Steenrod pointed his weapon at plaintiff. Steenrod retrieved from the toilet a substance that was later identified as cocaine. The officers handcuffed plaintiff and dragged him out of the bathroom.

Rask entered plaintiff's apartment and instructed the officers to move plaintiff to the couch by the front door. A third police officer detained plaintiff while Gofourth, Steenrod, and Rask searched the apartment. Dunning searched plaintiff's pregnant girlfriend, Adrianne Cornelius.

On October 31, 1994, plaintiff was tried and found guilty of possession of cocaine with intent to sell, deliver, or distribute within 1,000 feet of a school; obstruction of duty; failure to obtain a tax permit; possession of marijuana; possession of paraphernalia; and unlawful possession of food stamps. Plaintiff's conviction was subsequently overturned by the Kansas Court of Appeals on the grounds that the affidavit supporting the

---

**1.** Plaintiff has improperly named this defendant; the correct name being the Board of County Commissioners of Labette County, Kansas. For purposes of this order, the court will refer to this defendant as Labette County or the County.

search warrant did not establish probable cause.

Additional facts will be provided as necessary.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *See id.* at 254, 106 S.Ct. at 2513.

## III. Discussion

### A. Absolute Immunity

Defendant Rask contends he is entitled to absolute immunity. "A prosecutor is entitled to absolute immunity when his activities are intimately associated with the judicial phase of the criminal process." *DiCesare v. Stuart*, 12 F.3d 973, 977 (10th Cir. 1993). However, when a prosecutor is engaged in investigative or administrative duties, he is entitled only to qualified immunity. *Id.; see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993). For instance, when a prosecutor performs the investigative functions normally performed by a detective or police officer, he is entitled to only qualified immunity. *Id.*

In this case, Rask drafted the affidavit and search warrant for a potential case and subsequently assisted in the service of the warrant and search of plaintiff's apartment. The Supreme Court has explicitly stated that the "issuance of a search warrant is unquestionably a judicial act." *Burns v. Reed*, 500 U.S. 478, 479, 111 S.Ct. 1934, 1935–36, 114 L.Ed.2d 547 (1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 363 n. 12, 98 S.Ct. 1099, 1108 n. 12, 55 L.Ed.2d 331 (1978)). Therefore, Rask is entitled to absolute immunity for drafting of the affidavit and search warrant. Rask is, however, entitled only to qualified immunity for the actions of serving a search warrant and assisting with the search of plaintiff's apartment.

### B. Qualified Immunity

Defendants Dunning, Gofourth, Rask, and Steenrod all claim qualified immunity as to plaintiff's Fourth Amendment claims resulting from the search of his apartment. Further, Gofourth and Steenrod claim qualified immunity as to plaintiff's excessive force claims. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396

(1982). "Once the defendant has properly raised the defense of qualified immunity in a summary judgment motion, [the court applies] a two-part framework. First the plaintiff must show the defendant's conduct violated a constitutional right; second the plaintiff must show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." *Lawmaster v. Ward,* 125 F.3d 1341, 1346–47 (10th Cir. 1997). "Once the plaintiff clears this hurdle, 'the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute.'" *Id.* (quoting *Woodward v. City of Worland,* 977 F.2d 1392, 1396–97 (10th Cir.1992)). The question of whether the defendants are entitled to qualified immunity is a legal one; the court cannot avoid the question by framing it as a factual issue. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 645–46 (10th Cir. 1988).

### · 1.  Search of apartment without probable cause

### a.  Did Defendants' conduct violate the Fourth Amendment?

■ Plaintiff claims that the defendants' conduct violated his Fourth Amendment rights because the search warrant was not supported by probable cause. The court agrees. The Kansas Court of Appeals, in reversing plaintiff's criminal conviction, stated that "[t]he affidavit in this case lacks sufficient factual detail to provide a detached magistrate a basis on which to determine whether the information provided by the [confidential informant] was reliable. In the absence of such factual information, the affidavit lacks probable cause." *State v. West,* No. 73–359, at 7, 918 P.2d 291 (Kan.Ct.App. 1996) (unpublished opinion). The court continued, "We hold that the affidavit in this case does not set forth sufficient facts to enable a magistrate to determine whether probable cause existed for the issuance of a search warrant. In the absence of a showing of probable cause, the search warrant was improperly issued." *Id.* at 8. The court agrees with the reasoning and conclusion of

the Kansas Court of Appeals. *See United States v. Anderson,* 981 F.2d 1560, 1568 (10th Cir.1992) (no probable cause established in affidavit due to lack of admissible factual information). Accordingly, plaintiff has established that his Fourth Amendment rights were violated; he must now show that reasonable persons in the defendants' various positions would have known that the conduct violated plaintiff's clearly established rights.

### b.  Has plaintiff satisfied his burden of showing defendants' conduct violated clearly established law?

■ "A plaintiff faced with the defense of qualified immunity not only bears the burden of showing the officers conduct violated the Constitution, but also bears the burden of showing the officer's conduct violated law that was 'clearly established' such that a reasonable officer would have known the conduct violated the asserted right." *Lawmaster,* 125 F.3d 1341, 1350–51 (citing *Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987)). For the law to be clearly established, a Supreme Court or Tenth Circuit decision must be on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Garramone v. Romo,* 94 F.3d 1446, 1451 (10th Cir.1996).

It is clearly established that individuals have the right to be free from warrantless searches of their homes unless the searching officers have probable cause or there are exigent circumstances. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. "However, 'if the test of clearly established law were to be applied at this level of generality, it would bear no relationship to the objective legal reasonableness that is the touchstone of *Harlow,*' and would not reasonably allow officials to anticipate when their actions may give rise to liability for damages." *Lawmaster,* 125 F.3d 1341, 1350–51 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039). Therefore, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must

be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Therefore, the relevant question for the court is whether a reasonable officer could have believed defendants' search to be lawful in light of clearly established law and the information the searching officer possessed. *See id.* at 641, 107 S.Ct. at 3039–40.

#### i. Claims against Dunning and Steenrod

■ The Supreme Court held in *Anderson* that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641, 107 S.Ct. at 3040. Plaintiff has not established that (1) Dunning and Steenrod were involved in the preparation of the affidavit or the search warrant or (2) that they knew or should have known that the affidavit did not establish probable cause thereby making the search warrant was invalid. In light of the information possessed by Dunning and Steenrod, the court concludes "a reasonable officer could have believed the search to be lawful." *See id.; see also Salmon v. Schwarz,* 948 F.2d 1131, 1141 (10th Cir.1991) (officer without knowledge of facts underlying search warrant is entitled to rely on its validity). Accordingly, summary judgment is granted to defendants Dunning and Steenrod as to this issue.

#### ii. Claims against Rask and Gofourth

■ An officer loses his shield of immunity when he obtains a warrant supported by an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098. Rask and Gofourth were involved in the preparation of the affidavit and search warrant. Gofourth provided the information contained in the affidavit and signed it. Rask drafted both the affidavit and the search warrant.

The affidavit on which the search was issued stated:

On March 31, 1994, a confidential informant, who has provided reliable information in the past regarding drugs, told Detective Scott Gofourth of the Parsons Police Department that Shawn West had 4 rocks of crack cocaine on his person on 3–31–94. The CI saw the cocaine on West's person. The CI noted that West lived at 1527 Corning, and knew that his tires had been slashed. Shawn West resides at 1527 Corning # 1, Parsons, which is the downstairs apt. on the West side of the building. West's name is also on the mailbox for apt. # 1.

On March 31, 1994, PSO Gary McFarlin took a report for criminal damages for Shawn West, whose date of birth is 3–17–74, for two slashed tires on his car, which is a 1980 Buick 2–door with Kansas tag HQU 760, which is not registered to West, but he claimed the car belonged to him. This car is parked on the North side of the street with the tow [sic] tires facing the street flattened because they were slashed.

It is believed that cocaine and items associated with cocaine will be found in West's residence, in his vehicle, and/or on his person.

*State v. West,* No. 73–359, at 2–3. The court agrees with the Kansas Court of Appeals that the affidavit is lacking in several respects:

(1) It states that the CI is reliable, but it does not set forth specific facts upon which a determination can be made. The statement that the CI has "provided reliable information in the past regarding drugs" is a conclusion. There are no facts upon which a magistrate could determine whether the statement was true. (2) The affidavit states that the CI has observed cocaine on defendant's person. It does not state when, where, or how this took place. (3) The affidavit does not explain the motivations of the CI in providing information to the police. Such information is vital in providing an examining magistrate with facts from which he or she can determine whether information provided by a CI is reliable. (4) Although the affidavit was used to obtain a search warrant to search defendant's residence, it does not state

facts which establish a nexus between defendant's alleged criminal activity and his residence.

*Id.* at 4–5.

[redacted] Although the affidavit fails to establish probable cause, defendants Rask and Gofourth only lose their shield of immunity if a reasonable officer could not have believed that issuing a warrant based on this affidavit to be lawful. The Kansas Court of Appeals found that no reasonable officer would have believed the search in question to be lawful:

> We believe that in this case, a reasonably trained law enforcement officer should have realized that the affidavit in question did not set forth sufficient facts to establish probable cause.

*Id.* at 10. The court agrees. In light of the clearly established law, the facts of the case, and the knowledge possessed by Rask and Gofourth, the court concludes that these defendants did not act reasonably. *See Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. Accordingly, defendants Rask and Gofourth are not immune from suit, and summary judgment is denied as to this issue.

*2. Excessive Force*

[redacted] The analysis of an excessive force claim brought under § 1983, begins by identifying the specific constitutional right infringed by the challenged application of force. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Where, as here, the excessive force claim arises in the context of an arrest of a free citizen, "it is most properly characterized as one invoking the protections of the Fourth Amendment which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* "The reasonableness inquiry is an objective one and heavily fact dependant." *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir.1995). The court, therefore, must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* This reasonableness standard is "clearly established" for the purpose of § 1983 actions. *Id.* at 1552–53.[2]

Plaintiff contends that both officers pointed their weapons at him and that officer "Gofourth put his gun against [plaintiff's] temple and leaned against it with all his weight." (West Dep. ¶ 8). Defendants Gofourth and Steenrod claim they are entitled to qualified immunity as to plaintiff's excessive force claims.

*a. Steenrod*

[redacted] When Officer Steenrod entered plaintiff's apartment, he had his weapon drawn not knowing what he would find inside. When the plaintiff fled to the bathroom to dispose of the cocaine, the officers followed. Gofourth apparently arrived at the bathroom first. When Steenrod arrived, he saw Gofourth struggling with plaintiff to keep plaintiff from disposing of the cocaine. It is at this time that Steenrod allegedly pointed his weapon at plaintiff. The severity and circumstances surrounding a suspect's possession of cocaine and the fact the plaintiff was struggling with Gofourth, suggests that Steenrod's pointing the weapon at plaintiff was objectively reasonable. Because the court concludes that the force used was reasonable under the circumstances, there was no constitutional right infringed. See *Graham,* 490 U.S. at 394, 109 S.Ct. at 1870–71. Accordingly, summary judgment is granted to Steenrod as to the excessive force claim.

*b. Gofourth*

[redacted] According to plaintiff, Gofourth pushed the barrel of his gun against plain-

2. A claim of excessive force differs from claims based on violations of other Fourth Amendment rights. *Street v. Parham,* 929 F.2d 537, 541 n. 2 (10th Cir.1991). Because the reasonableness standard is clearly established in the Tenth Circuit, the only question for a district court on summary judgment is whether the force used was reasonable under the circumstances. If the court determines the force used was reasonable, summary judgment should be granted in favor of the officer. If the court determines that the force used was unreasonable, any question of objective reasonableness also has been foreclosed, and summary judgment should be denied. *Id.*

tiff's temple and leaned his weight against it. Plaintiff contends that no probable cause or provocation existed for Gofourth's actions. In his motion for summary judgment, Gofourth acknowledges that there is a factual dispute as to where his weapon was pointed during this struggle, but he claims that it is undisputed that he did not strike the plaintiff with his gun or fire it at him. Gofourth alleges that, when he first entered the apartment, he saw plaintiff with a knife or razor blade. However, it is unclear whether plaintiff had any weapon in the bathroom when the gun was pushed against plaintiff's temple. Furthermore, it is unclear if plaintiff was blocking Gofourth's access to the toilet or attempting to get around Gofourth to flush the toilet; however, either scenario suggests plaintiff physically confronted Gofourth. These uncertainties in the factual record before the court create genuine issues of material fact. Accordingly, summary judgment is denied to Gofourth as to this issue.

### C. Municipal Liability

▉▉▉▉▉ In his summary judgment papers, plaintiff claims that the City of Parsons (City) and Labette County (County) are subject to liability because Rask had final decision-making authority to establish policy for both the City and County. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action

**3.** Plaintiff has not shown the court any Kansas statute, ordinance, regulation, city charter, or other similar source which would indicate that Rask had authority to make official policy with respect to issuing and executing search warrants.

ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). "Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." [3] *Id.* at 483, 106 S.Ct. at 1300.

In *Pembaur*, "[t]he Supreme Court held the county liable for the prosecutor's action, concluding that 'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Mann v. Purcell*, 718 F.Supp. 868, 873 (D.Kan.1989) (quoting *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300 (White, J., concurring)). *Pembaur*, however, does not stand for the proposition that every act of municipal officers with final authority to effect or authorize searches represents the policy of the municipality.

> Local law enforcement officers are expected to obey the law and ordinarily swear to do so when they take office. Where the controlling law places limits on their authority, they cannot be said to have the authority to make contrary policy. Had the Sheriff or Prosecutor in this case failed to follow an existing warrant requirement, it would be absurd to say that he was nevertheless executing county policy in authorizing the forceful entry in this case and even stranger to say the county would be liable if the Sheriff had secured a warrant and it turned out that he and the Magistrate had mistakenly though there was probable cause for the warrant. If deliberate or mistaken acts like this, admittedly contrary to local law, expose the county to liability, it must be on the basis of *respondeat superior* and not because the officers' acts represent local policy.

The court notes that plaintiff has requested discovery pursuant to Fed.R.Civ.P. 56(f) to determine if Rask had final decisionmaking authority. This request is denied because such discovery would not affect the court's decision.

*Pembaur,* 475 U.S. at 486, 106 S.Ct. at 1301–02 (White, J. concurring).

"When an official's discretionary decisions are constrained by policies not of that official's making, those policies rather than the subordinate's departures from them are the acts of the municipality." *Thomas v. City of Snyder, Okla.,* No. 95–6252, 1996 WL 662453, at *5 (10th Cir. Nov.15, 1996). In this case, the assertion that it is not the official policy of the City or County to require other than probable cause in obtaining and executing search warrant is not controverted. Thus, the court finds that the official policy is to require probable cause and neither the City nor the County may be held liable for the acts of defendant Rask.

The court notes that plaintiff's complaint also alleged that the City and County violated his rights by failing to train and supervise their employees and failing to promulgate constitutional procedures and policies for drafting and submitting affidavits. Plaintiff further argues that the City is liable by virtue of defendants Gofourth and Steenrod's final authority to execute affidavits and warrants and by permitting a policy and custom of unreasonable force to exist and be followed by the police department.

The City and County argue that they cannot be held liable if there is no underlying constitutional violation by any of their officers. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir.1993). Defendants additionally argue that there is no evidence that their alleged deliberate indifference toward the rights of their inhabitants caused any injury to plaintiff. *See City of Canton v. Harris,* 489 U.S. 378, 385–89, 109 S.Ct. 1197, 1202–05, 103 L.Ed.2d 412 (1989) ("[T]o establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. When the asserted policy consists of the failure to act, the plaintiff must demonstrate that the municipality's inaction was the result of 'deliberate indifference' to the rights of its inhabitant."). The plaintiff apparently concedes that he has no

further claims against the City or County because he does not respond to defendants' arguments. *See Yeoman v. City of Parsons, Kan.,* No. 95–2272–GTV, 1997 WL 159048, at *9–10 (D.Kan. Mar.21, 1997). For the reasons set forth, the court grants summary judgment to the City and County on all of plaintiff's § 1983 claims against them.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 10) is GRANTED IN PART and DENIED IN PART:

(1) summary judgment is GRANTED to defendants Dunning and Steenrod as to plaintiff's Fourth Amendment claim arising from the warrantless search;

(2) Summary judgment is DENIED to defendants Rask and Gofourth as to plaintiff's Fourth Amendment claim arising from the warrantless search;

(3) Summary judgment is GRANTED to defendant Steenrod as to plaintiff's claim of excessive force;

(4) Summary judgment is DENIED to defendant Gofourth as to plaintiff's claim of excessive force;

(5) Summary judgment is GRANTED to defendant City of Parsons' motion as to all claims against it; and

(6) Summary judgment is GRANTED to defendant Labette County as to all claims against it.

Copies of this memorandum and order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.